# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| vs. ) | CASE NO. 3:04-0568 |
| ) | JUDGE TRAUGER/KNOWLES |
| ) | |
| INTERNET MARKETING GROUP, ) | |
| INC., et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

This case is an action by the Federal Trade Commission against five individual Defendants and seven corporate Defendants. Plaintiff essentially avers that Defendants violated Section 5 of the Federal Trade Commission Act by engaging in unfair or deceptive acts or practices; that Defendants systematically violated the Franchise Rule; that Defendants violated the "Do Not Call" provisions of the telemarketing sales rule; and that the corporate Defendants were engaged in a common enterprise and are jointly and severally liable for the injury caused by each of them. Plaintiff also avers that the individual Defendants are liable for the corporate Defendants' violations. The violations alleged were allegedly committed in the course of Defendants' offering business opportunities or franchises for sale.

This matter is before the Court upon the Motion of Plaintiff, Federal Trade Commission, for Summary Judgment. Docket No. 402. Plaintiff has filed a supporting Memorandum of Law (Docket No. 463), and a "Statement of Undisputed Material Facts" (Docket No. 404), as required

by Local Rule 8(b)(7)(b). The Statement of Undisputed Material Facts submitted by Plaintiff is 153 pages long, and contains 527 allegedly undisputed material facts.

Additionally, in support of its Motion for Summary Judgment, Plaintiff filed an "Evidentiary Appendix" consisting of four volumes. Docket Nos. 405, 406, 407, 408. This Evidentiary Appendix is over 1,000 pages long, running from page 3147 through 4219. The first 3,146 pages of the FTC's "Appendix" have previously been filed with the Court. Docket Nos. 20-82, 116-118.

To say that this is a complex case would be a gross understatement.

Defendants Cindy Austin Gannon and Internet Marketing Group, Inc. ("IMG"), which are sometimes referred to hereafter as the "IMG Defendants," submitted a Response in Opposition to the Motion (Docket No. 432), and a Response to Plaintiff's Statement of Undisputed Material Facts (Docket No. 434). Because the IMG Defendants reduced the size of the type in their Response to Plaintiff's Statement of Undisputed Material Facts, they were able to reproduce the Undisputed Material Facts and provide their responses in a mere 173 pages.

Defendants Bonnallie, Hatch, Cutler, and Spraul also submitted a Response to Plaintiff's Motion for Summary Judgment (Docket No. 429), and a Response to Plaintiff's Statement of Undisputed Material Facts. Docket No. 417.

Defendants OneSetPrice, Inc., First Choice Terminal, Inc. (a Louisiana corporation), First Choice Terminal, Inc. (an Arizona corporation), B & C Ventures, Inc., RPM Marketing Group, Inc., and National Event Coordinators, Inc., did not respond to Plaintiff's Motion for Summary Judgment or to the Statement of Undisputed Material Facts.[1]

---

[1] In fact, these six Defendants, which are under the control of the Receiver, have not participated in this action, except that the Receiver signed the stipulated Preliminary Injunction Order on their behalf. Docket No. 125.

2

In order for Plaintiff to prevail on its Motion for Summary Judgment, Plaintiff must show that there is no genuine issue as to any material fact, and that it is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Convincing the Court that there are no genuine issues as to material fact is, therefore, critical to Plaintiff's Motion.

The Local Rules of this Court provide in pertinent part as follows:

> In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the *Federal Rules of Civil Procedure* shall be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by specific citation to the record. After each paragraph, the word "response" shall be inserted and a blank space shall be provided reasonably calculated to enable the non-moving party to respond to the assertion that the fact is undisputed.

Local Rule 8(b)(7)(b) (italics in original).

With regard to responses to the Statement of Undisputed Material Facts, the Local Rules of this Court provide in pertinent part as follows:

> Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. If the movant has not provided sufficient space to enable the non-movant to respond, the non-movant may attach a separate sheet or sheets of paper. Such response shall be filed with the papers in opposition to the motion for summary judgment.

Local Rule 8(b)(7)(c).

As the Local Rule provides, the purpose of the Statement of Undisputed Material Facts is "to assist the Court in ascertaining whether there are any material facts in dispute . . . ." The Statement of Undisputed Material Facts should, therefore, essentially provide the Court with a roadmap through the undisputed material evidence that should be considered in deciding the Motion for Summary Judgment. As a practical matter, the Statement of Undisputed Material Facts should allow the Court to rely upon a single document to ascertain whether a fact is undisputed, rather than searching through the more than 4,000 page "Appendix" and/or "Evidentiary Appendix" that has been filed. *See Street v. J. C. Bradford Co.*, 866 F.2d 1472, 1479 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

Particularly in a complex case, such as the one at bar, the Statement of Undisputed Material Facts can fulfill its function only if the moving party is candid and honest with the Court in stating those undisputed material facts. In other words, the facts set forth in the Statement of Undisputed Material Facts *must* accurately reflect and/or summarize the facts that appear elsewhere in the record. *See* Fed. R. Civ. P. 11. Moreover, those facts must be supported by the citations to the record that are given by the moving party.

The Court would have thought that such a relationship between the record itself, the citations thereto, and the Statement of Undisputed Material Facts would be so obvious as to render the need for the foregoing explanation unnecessary. It appears to the Court, however, that this is not the case.

Throughout Plaintiff's Statement of Undisputed Material Facts, Plaintiff misrepresents the record to this Court. In numerous instances, Plaintiff states a fact to be "undisputed" and provides a citation to the record supporting that undisputed fact, when, in reality, the cited portion of the

4

record plainly does not support the fact. A number of examples of such conduct are given below.

Undisputed fact No. 260 states, "IMG provided consumers with Basic Disclosure Statements when they attended the initial sales presentation, usually on a Friday or a Saturday." As authority for this proposition, Plaintiff cites not to the record, but to two previous Statements of Undisputed Material Facts, Nos. 100, 102. In undisputed fact No. 102, Plaintiff cites two depositions and five declarations. Only one of these citations specifically addresses IMG. That is the Declaration of Franklin B. "Brett" Collins. FTC App. 167. That Declaration states, in pertinent part, as follows:

> One of the documents I obtained from IMG at the March 19 sales seminar, in Boca Raton, Florida, was a document entitled "Disclosure Required By The Florida Law" ("Disclosure Document") that included an IBM balance sheet and a sample purchase agreement.

FTC App. 169, ¶ 10.

Thus, the citation to the record given by Plaintiff to support the proposition that IMG provided consumers with Basic Disclosure Statements shows, in reality, that only *one* consumer was provided with a document entitled "Disclosure Required By The Florida Law."

Undisputed fact No. 268 states, "On or after October 17, 2003, a substantial number of the outbound telephone calls initiated by SoundMedia and Guardian Enterprises/Communications on behalf of OSP, RPM, the FCT Entities, NEC and IMG were placed to telephone numbers listed on the National Do Not Call Registry maintained by the FTC (the "Do Not Call List")." As authority for this proposition, Plaintiff cites three exhibits, only one of which relates to IMG. The Declaration of Michael Harkins (FTC App. 1684) essentially establishes that he received *one* telephone call "from employees of Internet Marketing Group, Inc." after he registered his telephone number on the FTC's "Do Not Call" Registry. That occurred approximately March 10, 2004. There is no indication in any of the cited Exhibits that SoundMedia and/or

Guardian Enterprises/Communications were involved in this telephone call. Thus, while Plaintiff has averred that a *substantial number* of outbound telephone calls initiated by Guardian Enterprises/Communications on behalf of IMG were placed to telephone numbers listed on the National Do Not Call Registry, the record cited supports the proposition that, with regard to IMG, only *one* person received *one* telephone call after he registered his telephone number on the "Do Not Call" Registry.

Undisputed fact No. 191 states, "Bonnallie's spreadsheet appears to have been the basis for the ROI projections." In support of this proposition, Plaintiff cites Bonnallie's answer to Interrogatories No. 5. The cited Interrogatory and the Response thereto are as follows:

> Describe your involvement in the development and final approval of any sales presentation scripts and Power Point slide presentation [*sic*] used by each corporate defendant's representatives, agents or employees at each company's sales shows, including but not limited to the development of the detailed income, expense and profit projections given at First Choice Terminal and IMG sales shows.
>
> RESPONSE:
>
> I developed a spreadsheet for FCT and IMG only that allowed distributor [*sic*] to input their own numbers into a business formula to create a hypothetical situation. The use of this tool enables distributors to focus their individual efforts and track their own individual results. I trained the seminar representatives for FCT and IMG on this spreadsheet and how distributors could use this to develop their own business plan and business model. *Formulas in the spreadsheet were based on national averages derived from Summit Research.*

FTC App. 4411, 4436 [Interrogatory No. 5] (emphasis added).

Thus, the citation given by Plaintiff not only does not support Plaintiff's allegedly undisputed fact, it flatly contradicts it.

Undisputed fact No. 255 states, "IMG's sales presentation stated that its business opportunity

6

included IMG's Five Stage Location Assistance Program, which would provide its owner-operators with appointments with business owners who had indicated that they would like to have IMG terminals located in their places of business." As authority for this proposition, Plaintiff cites IMG's Request for Admissions Nos. 68 and 69 at FTC App. 4233. Those Responses, however, relate to Guardian Enterprises, and have nothing to do with the "Five Stage Location Assistance Program."

After searching the record, the Court discovered that IMG's Responses to Requests for Admission Nos. 49 and 50, at FTC App. 4229, address this matter. Those Requests and the Responses state as follows:

> Request No. 49: Admit that representatives of IMG told consumers at IMG's sales shows that the business opportunities they purchased would include the benefits of IMG's "Five Stage Location Assistance Program."
>
> Response: Admit.
>
> Request No. 50: Admit that representatives of IMG told consumers at IMG's sales shows that IMG's Five Stage Program would provide purchasers of IMG's business opportunities with appointments with business owners who had indicated that they would like to have IMG public-access internet terminals located in their places of business.
>
> Response: IMG objects to the term "business opportunity" to the extent that it infers [*sic*] the existence of a "franchise" or "business opportunity" under the FTC Act or the Franchise Rule. Without waiving and subject to this objection *IMG denies this request.*

FTC App. 4229 (emphasis added).

Thus, the citation given by Plaintiff to support the allegedly undisputed fact has nothing to do with the substance of the allegedly undisputed fact. Even if the Court assumes that the citation is merely a typographical error, and that Plaintiff intended to cite the Responses to the Requests for

7

Admission that actually relate to the "Five Stage Location Assistance Program," those citations flatly contradict the allegedly undisputed fact, because IMG denied the Request for Admission.

Undisputed fact No. 257 states, "Gannon admits that Robin White obtained signed location contracts for IMG owner-operators . . . ." As authority for this proposition, Plaintiff cites Gannon's deposition, page 83, line 7-15 and pages 87 line 18 to 88 line 10. Significantly, Plaintiff does not cite to the FTC Appendix as it has done throughout its Statement of Undisputed Material Facts. Perhaps that is because page 87 of the Gannon deposition is not included in the FTC Appendix, and, as far as the Court is aware, it is not even a part of the record that is before the Court.[2] Page 88 of the Gannon deposition (FTC App. 3857) plainly does not support the proposition that Ms. White actually obtained signed location contracts for IMG owner-operators. Moreover, the cited portions of page 83 of the Gannon deposition (FTC App. 3854) state as follows:

> Q. What did they [Robin White and Tina Vogelgesang] do for IMG?
>
> A. The clients, the distributors at a show, at a training, *if they said they needed some help, they could acquire Robin to go out and help them find a location for their terminals.*
>
> Q. Who paid Robin for those services?
>
> A. IMG.
>
> Q. So the distributor didn't have to pay?
>
> A. To Robin, no.

FTC App. 3854 (emphasis added).

Immediately following the cited portion of the deposition quoted above, are the following

---

[2] Thus, it appears that Plaintiff has cited to the Court, as authority for an Undisputed Material Fact, a page of a deposition that Plaintiff *knows* is not properly a part of the record that has been filed with the Court.

8

questions and answers:

> Q. Did they have to pay extra to IMG?
>
> A. They were supposed to, yes.
>
> Q. Did they?
>
> A. We never got that far. We were closed down.

FTC App. 3854.

Thus, the cited portions of the deposition do not support the proposition that Ms. White actually "obtained" any signed location contracts.

Undisputed fact No. 50 states, "Bonnallie admits that . . . he participated, personally and directly, in at least some of IMG's marketing activities.[3] As authority for this proposition, Plaintiff has cited Request for Admission No. 27 (FTC App. 4368, 4425). Request for Admission No. 27 states, "Admit that BONNALLIE participated in at least some of the marketing activities of IMG." While Bonnallie admits the requested matter, there is absolutely nothing in the citation to show that he "personally and directly" so participated. Thus, Plaintiff's allegedly undisputed fact is not supported by the citation Plaintiff has given.

Undisputed fact No. 272 states, "Spraul was responsible for the Corporate Defendants' day-to-day coordination of voice broadcast activities with the dialing companies." As authority for that proposition, Plaintiff cites two pages of the Spraul deposition, FTC App. 4126, beginning at line 23 to FTC App. 4127, ending at line 10. That portion of the deposition of Ms. Spraul states as follows:

> A. I was never in charge of the relationship with the dial company.

---

[3] For the convenience of the reader, the actual citations to the record given in the undisputed facts and in the responses thereto will generally be omitted when the undisputed facts and the responses are quoted herein.

9

> I was taught what to look for and how to know what to order as far as dials and how much staff we have and what we want for that weekend's seminar, but I was never in charge of the dial company relationship. I was trusted that I knew what I was doing, so I would talk to them and order dials and track that they are telling us the truth when they give us the invoice. I was responsible for all that, but nothing was paid to them without approval, and nothing went out – went out without the knowledge of –
>
> Q. Whose knowledge and whose approval?
>
> A. Dave.

FTC App. 4126-4127.

The foregoing exchange occurred immediately before the cited portion of the deposition:

> Q. When you started doing the messages, were you then in charge of the relationship with the –
>
> A. Dial company?
>
> Q. You call it a dial company?
>
> A. Yeah.
>
> Q. Okay.

FTC App. 4126, Lines 17-22.

The cited portion of the Spraul deposition plainly does not support the proposition that "Spraul was responsible for the corporate defendants' day-to-day coordination of voice broadcast activities with the dialing companies." The cited portion of the Spraul deposition never even mentions the "day-to-day coordination of voice broadcast activities with the dialing companies." Moreover, Spraul's testimony that, "I was never in charge of the relationship with the dial company," would seem to contradict any possibility that she was "responsible" for "day-to-day coordination of voice broadcast activities with the dialing companies."

Undisputed fact No. 62 states in part, "Gannon participated in IMG's marketing activities. . . ." The cited portions of the record, however, from the depositions of Ms. Gannon and Mr. Hatch merely show that Ms. Gannon was *present* for one of IMG's seminars.

Undisputed fact No. 71 states, "Spraul admits that she participated, personally and directly, in the marketing activities that RPM conducted on behalf of . . . . IMG." The cited portion of the record, however, merely states that Ms. Spraul attended a number of the IMG "shows." Moreover, nothing on the cited pages supports the proposition that RPM conducted the marketing activities of IMG.

Undisputed fact No. 98 states, "When taking reservations, Defendants' reservationists entered consumer information into a database which automatically generated invitation letters and packets, scripted confirmation/reminder calls or recorded confirmation/reminder messages to consumers who were expected to attend Defendants' sales shows." As authority for this proposition, Plaintiff has cited portions of four different depositions. Not a single one of these provisions relates specifically to Defendant IMG.

In fact, a number of Plaintiff's undisputed facts state that "Defendants" did something or failed to do something, without being specific as to which Defendants were involved. Since none of the corporate defendants, other than IMG, is actively participating in this lawsuit, and since one of Plaintiff's legal theories is that Defendants were involved in a "common enterprise," it is critical that Plaintiff be specific with regard to what IMG did or did not do. It is not sufficient for Plaintiff simply to lump all Defendants together under the term "Defendants," and leave it to the Court to attempt to determine from these citations whether one of those Defendants was IMG.

The foregoing examples are merely some of the situations in which Plaintiff has

11

misrepresented the record to the Court. As these examples illustrate, the Court simply cannot rely upon Plaintiff's Statement of Undisputed Facts as being supported by the citations Plaintiff itself has given to the record. While many of Plaintiff's undisputed facts may indeed be supported by the citations to the record Plaintiff has given, unfortunately the Court has no way to tell which of the undisputed facts fall into that category without checking every citation to the record that Plaintiff has given.[4] In this regard, the Court notes that many of Plaintiff's undisputed facts are supported by numerous citations to the record. *See, e.g.,* Undisputed Facts Nos. 18 (9 citations), 87 (12 citations), 89 (20 citations), 98 (14 citations), etc. As discussed above, however, it is not incumbent upon the Court to search the record to determine which facts are undisputed.

Plaintiff's Statement of Undisputed Material Facts is clearly improper under Local Rule 8(b)(7)(b), and the Court concludes that Plaintiff has failed to comply with that Local Rule.[5] Thus, Plaintiff has not met its burden of establishing that there is no genuine issue as to any material fact.

For the foregoing reasons, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket No. 402) be DENIED.

As discussed above, the Court has recommended the denial of Plaintiff's Motion for Summary Judgment based solely upon Plaintiff's own actions with regard to its Statement of Undisputed Material Facts. The Court feels compelled, however, to discuss the fact that the IMG

---

[4] Ordinarily, one might assume that the Responses of Defendants would accurately advise the Court as to which of Plaintiff's Undisputed Facts were not supported by Plaintiff's citations. Unfortunately, as will be discussed below, the Court cannot trust the Responses of the IMG Defendants either.

[5] It seems entirely possible that Plaintiff's counsel has also violated Fed. R. Civ. P. 11(b). The undersigned is considering whether to set a hearing concerning these possible violations.

12

Defendants have submitted improper Responses under Local Rule 8(b)(7)(c).[6]  In numerous instances, the IMG Defendants have failed to admit a fact that is clearly supported by Plaintiff's citation to the record.  In many instances, the IMG Defendants have cited to the record, but their citations do not support their denials.  In some instances, the IMG Defendants have denied an undisputed fact (or some part of that undisputed fact), without any citation to the record at all, and without stating that Plaintiff's citations to the record do not support the Undisputed Fact.  *See, e.g.,* Nos. 95, 96, 97, 190.

For example, undisputed fact No. 54 states, "Gannon worked for OSP as an office assistant and a 'locator' for OSP."  The IMG Defendants' Response states as follows:

> *The IMG Defendants dispute this alleged fact*.  Gannon worked for OSP as a temporary office assistant and a temporary "locator" on a part time, as-needed basis during the years 2000, 2001 and 2002.

(Emphasis added.)

The authority given by Plaintiff for the fact stated is Gannon's Interrogatory answers and portions of Gannon's deposition.  Those citations clearly support the proposition that Gannon worked as an office assistant and "locator" for OSP.  The IMG Defendants, however, dispute the alleged fact, by offering the explanation that Gannon's work for OSP as an office assistant and a locator was only temporary.  While the IMG Defendants' citations to the record do support the proposition that Gannon's positions were only temporary, that "explanation" is simply immaterial to the fact that Gannon actually worked for OSP as an office assistant and "locator."

Undisputed fact No. 95 states, "By 2004, RPM and IMG had outsourced the inbound

---

[6] It seems entirely possible that the IMG Defendants' counsel have violated Fed. R. Civ. P. 11(b).  The undersigned is considering whether to set a hearing concerning these possible violations.

13

reservation function to call centers in Canada and the Carribean." The IMG Defendants' Response is as follows:

> For the purpose of ruling on the Motion for Summary Judgment only, the IMG Defendants agree that IMG outsourced the inbound reservation function to Help Desk Now. The IMG Defendants dispute any portion of the Commission's alleged fact relating to the IMG Defendants not specifically agreed to herein as being undisputed. The IMG Defendants are without knowledge or information to form a belief as to the truth of the alleged fact as it relates to other Defendants.

In their Response, the IMG Defendants attempt to evade admitting the facts stated, by referring to the fact that IMG outsourced the inbound reservation function to HelpDeskNow. Plaintiff's citations for this fact, however, clearly establish that HelpDeskNow took those calls in Canada and in St. Lucia (which is in the Carribean).

Undisputed fact No. 177 states, "Spraul admits recording messages for IMG voice broadcast campaigns that promised to show consumers how to make over $1200 month in only two to four hours a month, and how to get a 10-15% return on their money." The IMG Defendants' Response is as follows:

> *The IMG Defendants dispute this alleged fact*. The Plaintiff has cited no evidence of any such recordings actually being used, which is how the Plaintiff uses this allegation in its Memorandum of Law in support of its Motion for Summary Judgment.

(Emphasis added.)

The supporting citations given by Plaintiff plainly show that Spraul admitted the matters stated. The IMG Defendants dispute that fact, however, offering no citation of their own, but instead providing an "explanation" that has nothing to do with the fact alleged. In their Response, the IMG Defendants plainly make an argument. The place for argument, however, is in their Brief, not in

14

their Response to a Statement of Undisputed Material Fact.

Undisputed fact No. 180 states, "IMG further admits that representations made in its presentation script and its Power Point slides were based on data compiled by Summit Research Associates." In support of this fact, Plaintiff cites IMG's answer to Interrogatory No. 12, which states as follows:

> Interrogatory No. 12: Identify the person or persons who created the income projections contained in IMG's sales show presentation(s) and Power Point slides.
>
> Answer: IMG objects to the use of the term "income projections" to the extent it infers [*sic*] that IMG promised its customers a certain level of income associated with their terminals. *Without waiving and subject to this objection, individuals at RPM created the presentation and slides based on data compiled by Summit Research Associates.*

FTC App. 4237 (emphasis added).

The IMG Defendants' Response to this Statement of Undisputed Fact is as follows:

> The IMG Defendants dispute this alleged fact to the extent that the Commission suggests that IMG made representations that constituted earnings claims. IMG's statement was: "individuals at RPM created the presentations and slides based on data compiled by Summit Research Associates."

The second sentence of their Response plainly shows that undisputed fact No. 180 is correct. The IMG Defendants, however, dispute the fact alleged, again offering a totally extraneous argument that Plaintiff somehow has suggested "that IMG made representations that constituted earnings claims." Nothing in the fact states that, and the IMG Defendants attempt to dispute this alleged fact by arguing something that the fact does not even allege is improper under Local Rule 8(b)(7)(c).

Undisputed fact No. 184 states, "Cutler admits that he authorized or permitted IMG's

15

representatives to tell consumers that each IMG PAIT represented potential advertising revenues of $3,000 per month." As authority for that proposition, Plaintiff cites Cutler's Responses for Requests for Admissions Nos. 92 and 93. Request No. 92 and the Response thereto state as follows:

> "Admit that Cutler authorized or permitted IMG's representatives to tell consumers at sales shows that each IMG public-access internet terminal represented potential advertising revenues of $3,000 per month."
>
> Response: Admit.

FTC App. 4301, 4342.

Thus, the undisputed fact is virtually a verbatim quote of the record cited by Plaintiff. The IMG Defendants' Response, however, is as follows:

> *The IMG Defendants dispute this alleged fact.* Mr. Cutler may admit authorizing individuals to say what is in the script filed by the Commission, but those statements did not include promises of any specific level of income from advertising revenues.

(Emphasis added.)

The Court could cite numerous other Responses given by the IMG Defendants that, in the opinion of the undersigned, are clearly improper under Local Rule 8(b)(7)(c), but that would serve no further purpose herein. It suffices to say that, given these instances of improper Responses by the IMG Defendants, the Court again simply cannot trust those Responses without checking every citation to every Response given by the IMG Defendants. As discussed above, the Court is not required to do this.

As stated above, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket No. 402) be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from

16

receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

_____
E. Clifton Knowles
United States Magistrate Judge